ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. As she drove across the Bay St. Louis bridge, Jacqueline O’Shey crossed the median into oncoming traffic and collided with Robert and Nancy MacDonald’s car. Nancy suffered injuries and Robert tragically died. Nancy sued the Mississippi Department of Transportation (MDOT) on Robert’s behalf as well as her own. Nancy also sued Jacqueline, but they managed to settle amicably.
¶2. Nancy sued for defective design, negligent construction, negligent maintenance, negligent improvement in that MDOT failed to construct a median barrier, and failure to warn. MDOT denied liability and filed a motion for summary judgment as it applied to Nancy’s cause of action for defective design. The circuit court granted partial summary judgment in that it awarded summary judgment on Nancy’s defective design claim only, but not on Nancy’s other causes of action.
¶ 3. MDOT filed a second motion for summary judgment and claimed that it was entitled to immunity as to Nancy’s remaining causes of action. MDOT argued that it was entitled to summary judg *357 ment as to all of Nancy’s causes of actions because the circuit court granted summary judgment as to Nancy’s cause of action for defective design. The circuit court agreed and granted MDOT’s motion for summary judgment as it applied to Nancy’s remaining causes of action. Aggrieved, Nancy appeals and raises two issues, listed verbatim:
I. Whether the trial Court erred in its application of Miss.Code Ann. § 11-46-1, particularly § 11-46-9, and specifically whether the Court erred in granting summary judgment based upon MDOT’s argument that because it was immune from liability for the defective design claim that it enjoys immunity for all claims which were filed against them.
II. Whether MDOT was required to exercise ordinary care in performing a discretionary function of maintenance to the bridge in question.
After careful consideration, we are of the opinion that the circuit court erred when it granted summary judgment based on the concept that immunity as to one cause of action, as a matter of law, amounts to immunity as to all of Nancy’s causes of actions. Consequently, we reverse the circuit court’s decision and remand this matter for proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶4. In Hancock County, Mississippi, a bridge known as “the Bay St. Louis bridge” (the bridge) connects two Mississippi municipalities, Bay St. Louis and Pass Christian. On February 5, 2000, Robert and Nancy MacDonald drove east on the bridge. At the same time, Jacqueline O’Shey drove across the bridge from the opposite direction. As their paths crossed, Jacqueline crossed the median, proceeded into the MacDonalds’ lane, and collided head-on into the MacDonalds’ car. Tragically, Robert died. Nancy suffered injuries but ultimately survived.
¶5. On June 13, 2001, Nancy filed a complaint in the First Judicial District of the Hinds County Circuit Court, by which she raised a wrongful death action on Robert’s behalf and sued individually as well. Nancy named the Mississippi Department of Transportation (MDOT) as a defendant, as well as O’Shey. As mentioned, Nancy and Jacqueline settled.
¶ 6. However, as to MDOT, Nancy alleged that MDOT caused her injuries and Robert’s death based on listed claims for (a) defective and unreasonably dangerous design, (b) defective and unreasonably dangerous construction of the bridge, (c) negligent maintenance and improvement of the bridge, (d) failing to warn the public of the dangerous propensities or conditions of the bridge, (e) failing to use proper materials for reasonably safe construction of the bridge, (f) failing to use proper materials for reasonably safe maintenance of the bridge, (g) failing to properly test and inspect the bridge, and (h) failing to construct a barrier in the center of the bridge. MDOT answered and denied liability. On February 7, 2002, the Hinds County Circuit Court transferred venue to the Hancock County Circuit Court.
¶ 7. On July 11, 2002, MDOT filed a motion for summary judgment. MDOT submitted that summary judgment was appropriate based on immunity under the Mississippi Tort Claims Act (MTCA). In the brief that accompanied MDOT’s motion for summary judgment, MDOT cited Mississippi Code Annotated Section 11-46 — 9(l)(p) (Rev.2002) for the proposition that a governmental entity shall not be liable for any claim:
*358 [AJrising out of a plan or design for construction or improvements to public property, including but not limited to, public ... bridges ... where such plan or design has been approved in advance of the construction or improvement by the legislative body or governing authority of a governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval, and where such plan or design is in conformity with engineering or design standards in effect at the time of preparation of the plan or design.
MDOT submitted that it was immune from Nancy’s cause of action for defective design if it demonstrated that (1) the State Highway Commission approved the plan or design for the bridge prior to construction, and (2) that the plan or design was in conformity with the engineering or design standards that were in effect at the time the bridge plan or design was prepared. To that end, MDOT submitted minutes of a “highway commission” meeting dated January 31, 1951, and an affidavit from Harry Lee James, P.E.
¶ 8. The attached January 31, 1951 minutes reflected the highway commission’s resolution in which it approved construction of the bridge in accordance to the bridge plans and specifications. James’s affidavit indicated that MDOT employed him as “the Bridge Engineer.” James further stated that MDOT had continuously employed him in that capacity since 1999.
¶ 9. James attached the bridge plans and specifications to his affidavit and swore that he reviewed them. James concluded that the bridge plans and specifications “conform[ed] to industry standards which at the time of construction were proscribed by the American Association of State & Highway Officials.” What is more, James swore that “the building of the bridge specifically conformed at that time to engineering standards generally acceptable and preferable within the field of civil engineering.” James concluded that, “[bjased on [his] education, training and experience ... the bridge ... complied with sound engineering design and construction standards that existed in the bridge design industry in 1953.” Based on James’s review of the bridge plans and specifications, MDOT concluded that the circuit court should find that there was no genuine issue of material fact that it was entitled to immunity as to Nancy’s defective design claim. Consequently, MDOT submitted that the circuit court should award summary judgment accordingly.
¶ 10. On July 30, 2002, Nancy responded to MDOT’s motion for summary judgment. Nancy argued that the circuit court should overrule MDOT’s motion for summary judgment because (a) there existed disputed material facts, (b) MDOT failed to address all the causes of action she raised in her complaint, and (c) MDOT was not entitled to the immunity granted by the MTCA because MDOT failed to use ordinary care in performing its duties. Less than two weeks later, MDOT submitted a rebuttal to Nancy’s response. MDOT claimed that it was entitled to summary judgment as to Nancy’s defective design and negligent maintenance and that Nancy’s other claims were merely derivative of her defective design and negligent maintenance claims. MDOT reasoned that, based on the derivative nature of those claims, it had addressed each and every cause of action that Nancy alleged in her complaint.
¶ 11. MDOT reiterated its position that it was entitled to summary judgment based on section 11 — 46—9(l)(p). Additionally, MDOT also set forth arguments that were not contained in its initial motion for summary judgment. That is, MDOT ad *359 dressed those causes of action other than defective design and construction.
¶ 12. Five months later, Nancy filed an objection to MDOT’s rebuttal. Nancy also filed a motion to strike portions of MDOT’s rebuttal. Nancy requested that the circuit court strike portions of MDOT’s rebuttal on the basis that it exceeded the scope of its initial motion. Nancy asked the circuit court to limit MDOT’s argument to those points raised in MDOT’s initial motion for summary judgment. On January 17, 2003, the parties went before the circuit court and presented their respective arguments for and against summary judgment.
¶ 13. On February 6, 2003, the circuit court filed an order and overruled MDOT’s motion for summary judgment regarding Nancy’s causes of action other than her defective design claim. Specifically, the circuit court stated that it was “of the opinion that [MDOT’s] motion [for summary judgment] should be denied with regard to all [Nancy’s] claims except the claim of defective design.” Accordingly, the circuit court granted partial summary judgment for MDOT as it pertained to Nancy’s cause of action for defective design. However, the circuit court also ordered that MDOT could renew its motion for summary judgment regarding Nancy’s other causes of action. Nancy does not appeal the circuit court’s decision to award partial summary judgment on MDOT’s behalf.
¶ 14. On July 26, 2004, MDOT filed its second motion for summary judgment. According to MDOT, because the circuit court granted summary judgment and found immunity based on section 11^16-ll(l)(p), MDOT was totally immune from Nancy’s remaining causes of action. MDOT submitted that it need only demonstrate immunity under one provision of the MTCA to be entitled to immunity as to each and every cause of action that Nancy raised in her complaint.
¶ 15. On August 11, 2004, Nancy responded to MDOT’s second motion for summary judgment and, quite naturally, disagreed that MDOT was entitled to immunity as to all of her causes of action because it had demonstrated immunity as to one of her causes of action. On September 1, 2004, the parties went before the circuit court for arguments on MDOT’s second motion for summary judgment. Ultimately, the circuit court granted MDOT’s second motion for summary judgment and entered a final judgment of dismissal based on its decision to award summary judgment as to Nancy’s defective design claim. That is, the circuit court found that MDOT was entitled to summary judgment as to all of Nancy’s remaining claims because it had awarded summary judgment as to Nancy’s cause of action for defective design.
¶ 16. Nancy appeals the circuit court’s decision to grant summary judgment as to her remaining claims. The Mississippi Trial Lawyers Association filed an amicus curiae brief in support of Nancy’s position. Additionally, the Mississippi Defense Lawyers Association filed its own amicus curiae brief in support of MDOT’s position.
STANDARD OF REVIEW
¶ 17. This Court conducts a de novo review of orders granting or denying summary judgment. Mantachie Natural Gas v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992). According to Rule 56 of the Mississippi Rules of Civil Procedure, a circuit court may grant summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment *360 as a matter of law.” “A fact is material if it ‘tends to resolve any of the issues, properly raised by the parties.’ ” Webb v. Jackson, 583 So.2d 946, 949 (Miss.1991) (quoting Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 433 (Miss.1988)).
¶ 18. In determining whether there exists a genuine issue of material fact, we must view the evidence in the light most favorable to Nancy, the non-moving party. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997). Not only that, we must consider motions for summary judgment with a skeptical eye, because it is preferable to err on the side of the non-moving party. Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss.1986).
ANALYSIS
I. Whether the trial Court erred in its application of Miss.Code Ann. § 11-46-1, particularly § 11-46-9, and specifically whether the Court erred in granting summary judgment based upon MDOT’s argument that because it was immune from liability for the defective design claim that it enjoys immunity for all claims which were filed against them.
¶ 19. Essentially, Nancy raised five separate causes of action in her complaint: (a) defective design, (b) negligent construction, (c) negligent maintenance, (d) negligent improvement, including improper testing, improper inspection and failure to construct a concrete median barrier, and (e) failure to warn of the bridge’s dangerous condition and propensities. The circuit court considered two motions for summary judgment. First, the circuit court granted partial summary judgment based on Mississippi Code Annotated Section 11-46-9(l)(p). That summary judgment applied solely to Nancy’s claim for defective design. That left Nancy with viable causes of action for negligent construction, negligent maintenance, negligent improvement, and failure to warn.
¶ 20. Incident to MDOT’s second motion for summary judgment, the circuit court awarded summary judgment as to all of Nancy’s remaining causes of action. The circuit court based its decision on an interpretation of the MTCA termed “Fra-sier’s octopus.” “Frasier’s octopus” stands for the principle that where one exemption listed at Section 11-46-9(1) applies, no further immunity is necessary, as that immunity in and of itself is sufficient to defeat a claim.
¶ 21. The term “Frasier’s octopus” originated from a law review article by Jim Frasier entitled, “A Review of the Substantive Provisions of the Mississippi Governmental Immunity Act: Employees’ Individual Liability, Exemptions to Waiver of Immunity, Non-jury Trial and Limitation of Liability,” 68 Miss. L.J. 703 (1999). That law review article stated, “the various exemptions [listed under Section 11-46-9(1)] are like an octopus’s arms; even if one doesn’t get you, another one may.” Id. at 743.
¶ 22. MDOT takes the position that this Court adopted “Frasier’s octopus” in Pearl River Valley Water Supply District v. Bridges, 878 So.2d 1013 (Miss.Ct.App.2004). In Bridges, an employee of a water supply district arrested a man. Id. at (¶ 5). The arrestee sued the water supply district and its employee. Id. at (¶ 9). The plaintiff in Bridges alleged that the water supply district’s employee used excessive force when the employee arrested him. Id. The circuit court found the water supply district and its employee jointly and severally liable to the arrestee. Id. at (¶10).
¶ 23. On appeal, this Court found that two separate provisions of the MTCA were *361 relevant: the immunity that applies to law enforcement activities located at section 11 — 46—9(l)(c), and the “discretionary functions” immunity at section 11 — 46—9(l)(d). Id. at (¶ 11). This Court recognized that section 11-46-9(1) contains exemptions “lettered from (a) through (x).” Id. at (¶ 12). Further, Bridges recognized that the exemptions “are written in the disjunctive,” as indicated by the MTCA’s use of the word “or.” Id. Having recognized such, Bridges held that “[ajpplicability of any one of these sections creates immunity.” In so holding, Bridges cited Mr. Fra-sier’s law review article. Id. Finally, Bridges found that the employee was immune by virtue of the “law enforcement immunity” of section 11 — 46—9(1)(c) and that it was unnecessary to “review the discretionary function issue.” Id. at (¶¶ 32-33).
¶ 24. MDOT would have us apply the decision in Bridges to mean that, where a governmental entity is entitled to immunity as to one claim, that governmental entity is entitled to immunity as to all claims asserted by a plaintiff which caused his injuries. According to MDOT, because the circuit court found that summary judgment was appropriate as to Nancy’s defective design claim by way of section 11-46-9(l)(p), MDOT is also immune to Nancy’s negligent construction claim, her negligent maintenance claim, her negligent improvement claim, and her failure to warn claim.
¶25. We are of the opinion that MDOT’s position is misplaced. Bridges stood for the proposition that, as to any one specific claim, one basis for immunity is all that is necessary to find total immunity as to that claim only-not to every single claim raised by a plaintiff. It is true that, for any individual claim, where any one provision under section 11 — 46—9(1) grants immunity, a governmental entity is immune to that individual claim. However, where there are separate claims, that single provision may or may not be sufficient to create immunity as it applies to those other claims. Resolution of the question as to whether a single finding of immunity equates to immunity as to each and every claim raised depends on the facts of the case and the relevant claims. Therefore, such an issue must be decided on a case-by-case basis. Suffice it to say, the legal principle referred to as “Frasier’s octopus” applies to an individual claim, but may or may not apply to all claims.
¶ 26. We read Mr. Frasier’s law review article to comply with our current decision. In particular, Mr. Frasier’s law review article states:
It should also be noted that when one speaks of an original plan and design, one only contemplates construction and improvement, not subsequent routine maintenance. In other words, where the government designs and plans for construction of a roadway, or makes plans to improve its property, and those plans are approved and are in accordance with appropriate standards, the government is immune from liability no matter the ultimate result. But where a public entity engages in routine maintenance of its property, e.g., blacktopping a roadway, filling in street holes, or patching the wall of a government-designed building, the design exemption is inapplicable to that subsequent maintenance.
68 Miss. L. J. at 813 (footnotes omitted).
¶ 27. As authority, Mr. Frasier cited Costa v. Josey, 83 N.J. 49, 415 A.2d 337 (1980). Mr. Frasier noted that, in Costa:
a New Jersey court declared that if the initial design of a roadway contemplated that a concrete lane divider would be lowered by subsequent resurfacing, then the State could not be held liable for the divider’s later reduction in size and the *362 resultant automobile collision for lack of a visible road divider. However, if the plan did not contemplate such a reduction ... and the divider’s height was reduced by routine blacktopping maintenance, then the State could be held liable for negligent maintenance and the design immunity would afford it no immunization against liability.
68 Miss. L.J. at 813-14 (citing Costa, 415 A.2d. at 340). To be entirely clear, this language is dicta, as we do not necessarily adopt Costa, nor do we reject it. We merely note that Mr. Frasier’s law review article does not advocate for the interpretation of “Frasier’s octopus” according to the circuit court’s resolution. Succinctly put, immunity as to one claim does not necessarily, as a matter of law, equate to immunity for all claims.
¶ 28. We find that the circuit court erred when it found that, because Section 11 — 46—9(l)(p) granted MDOT immunity from liability related to Nancy’s cause of action for defective design, MDOT was also immune for Nancy’s remaining claims. For clarity’s sake, we do not disturb the circuit court’s decision as to whether MDOT is immune from Nancy’s defective design claim pursuant to section 11-46-9(l)(p) — Nancy did not appeal on the basis of that ruling. We only find that immunity under that provision does not, as a matter of law, grant immunity to Nancy’s remaining causes of action. Accordingly, we remand this matter to the circuit court.
II. Whether MDOT was required to exercise ordinary care in performing a discretionary function of maintenance to the bridge in question.
¶ 29. In its second motion for summary judgment, MDOT submitted an alternative argument to its argument for “Frasier’s octopus.” MDOT argued that it was entitled to immunity as to Nancy’s remaining claims pursuant to Mississippi Code Annotated Section 11 — 46—11 (1)(d) (Rev.2002), otherwise known as the “discretionary function exemption.” MDOT submits that maintenance and improvement of the bridge, including whether to build a median barrier, was a discretionary function.
¶ 30. As for Nancy’s failure to warn claim, MDOT argues that it was entitled to immunity under section 11 — 46—9(l)(v). In its motion for summary judgment, MDOT submitted that the danger created by the lack of a median barrier was “open and obvious” to anyone that exercised due care. MDOT points to Nancy’s own deposition to prove that the danger was “open and obvious.” In her deposition, Nancy stated, “I remember us driving down the road in the right lane ... I reached over and grabbed [Robert’s] arm, and I said, I think it’s really strange that there’s no medians. There’s nothing separating ongoing traffic.”
¶ 31. The circuit court’s rationale for summary judgment was based entirely on its erroneous interpretation of “Frasier’s octopus.” The circuit court never reached the issues of whether maintenance or improvement of the bridge was a discretionary function, whether MDOT was required to exercise ordinary care in maintaining or improving the bridge, or whether the danger posed by the lack of a median barrier was “open and obvious.”
¶ 32. Because the circuit court did not render its decision to sustain MDOT’s second motion for summary judgment on any of MDOT’s alternative arguments, we find it inappropriate to consider any issues that the circuit court has not yet had an opportunity to rule upon. We refrain from comment as to the merits of those arguments. Suffice it to say that this opinion should not be taken in any way as a decision that Nancy can or cannot defeat an additional *363 motion for summary judgment on remand, should MDOT pursue that course of action.
¶ 33. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS REVERSED AND REMANDED TO THE CIRCUIT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ„ CONCUR.